**SO ORDERED.**

**SIGNED this 20 day of September, 2017.**

David M. Warren
United States Bankruptcy Judge

---

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## FAYETTEVILLE DIVISION

IN RE:

BRADLEY MORTON PHILLIPS          CASE NO. 12-09022-8-DMW
SUSANNA G. PHILLIPS

     DEBTORS          CHAPTER 7

---

SHERRILL S. MCINNIS

     PLAINTIFF          ADVERSARY PROCEEDING
                 NO. 14-00125-8-DMW

vs.

BRADLEY MORTON PHILLIPS
SUSANNA G. PHILLIPS

     DEFENDANTS

---

## MEMORANDUM OPINION AND ORDER DISMISSING ADVERSARY PROCEEDING

The matter before the court is the viability of Sherrill McInnis' Complaint/Motion in

Adversary Proceeding and Objection to Discharge ("Complaint") filed by Sherrill S. McInnis

("McInnis") on August 4, 2014 against Bradley Morton Phillips ("B. Phillips") and Susanna G. Phillips (collectively "Phillips"). In their Answer and Defenses ("Answer") filed on October 3, 2014, Phillips defend that the Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), incorporated by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. The court conducted a hearing on May 17, 2017 in Raleigh, North Carolina. David Paul Ennis, Esq. appeared for McInnis, and Christopher A. Chleborowicz, Esq. and Dean R. Davis, Esq. appeared for Phillips. Based upon the pleadings and arguments of counsel, the court dismisses the Complaint for the reasons set forth herein.

## I. PROCEDURAL HISTORY

### A. Bankruptcy Case

Phillips filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code[1] on December 21, 2012, and Robert R. Browning ("Chapter 13 Trustee") was appointed as interim trustee to administer the case pursuant to § 1302.[2] Contemporaneously with the filing of their petition, Phillips filed a Proposed Chapter 13 Plan, and on July 24, 2013, Phillips filed a Proposed Chapter 13 Plan – Amended ("Plan").

On September 10, 2013, the Chapter 13 Trustee filed an Objection to Confirmation and Motion to Dismiss, objecting to confirmation of the Plan and asserting that Phillips' debts exceeded the Chapter 13 debt limitations set forth in § 109(e). On October 7, 2013, McInnis filed a Motion to Dismiss or for Conversion of Chapter 13 Plan by Creditor Sherrill S. McInnis,

---

[1] Except for within formal citations, references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be made by section number only.

[2] On April 4, 2014, the court appointed Joseph A. Bledsoe III as successor trustee.

2

requesting the court to deny confirmation of the Plan and to dismiss Phillips' Chapter 13 case or alternatively to convert the case to one under Chapter 7.

In response to the Chapter 13 Trustee and to McInnis, on December 2, 2013, Phillips filed a Request to Convert to Chapter 11, requesting the court to convert their case to one under Chapter 11.  At a hearing conducted on March 27, 2014, Phillips withdrew their request to convert to Chapter 11 and advised the court that they intended to convert voluntarily their case to one under Chapter 7.  On April 29, 2014, Phillips filed a Notice of Conversion of Chapter 7, effectively converting the case to Chapter 7 pursuant to § 1307(a) and Rule 1017(f)(3) of the Federal Rules of Bankruptcy Procedure.  On April 30, 2014, the court appointed Walter L. Hinson, Esq. ("Chapter 7 Trustee") to administer the estate pursuant to § 704.

## B. Adversary Proceeding

McInnis initiated this adversary proceeding when she filed the Complaint.  The Complaint contains two specific claims for relief:  dismissal of Phillips' Chapter 7 case pursuant to § 707(b) ("§ 707 Claim") and avoidance of a transfer as fraudulent pursuant to § 548(a)(1)(A) ("§ 548 Claim").[3]  With respect to the § 548 Claim, the Complaint's prayer for relief requests the court to enter "a money judgment against the [Phillips] in the amount of at least twenty thousand dollars ($20,000) on the account of the avoidance of the Transfers pursuant to 11 U.S.C. §§ 547, 548, 550, and 551 . . . with such recovery being for the benefit of the [Phillips'] estate pursuant to 11 U.S.C. §§ 547, 548, 550, and 551."

The Complaint's opening paragraph indicates that McInnis intended to object to Phillips' discharge pursuant to §§ 523 and 727.  The Complaint does not contain a claim for relief under

---

[3] The § 548 Claim is actually set forth within two counts in the Complaint, one title "Actual and Constructive Fraud" and the other titled "Actual Fraud."  In both counts, McInnis appears to be seeking avoidance of a transfer as actually fraudulent under § 548(a)(1)(A), and the court considers these counts as one claim for relief.

either of these statutory provisions; however, the Complaint's prayer for relief includes a request that the court deny Phillips a discharge of their debts to McInnis pursuant to §§ 523(a)(2)(A) and (a)(4) ("§ 523 Claim").

The Rule 12(b)(6) defense set forth in Phillips' Answer was noted upon the court's docket as a Motion to Dismiss Adversary Proceeding ("Motion to Dismiss"); however, Phillips did not request a hearing on the Motion to Dismiss, and the court did not autonomously set one. In the Motion to Dismiss, Phillips asserted generally that the Complaint should be dismissed for failure to state a claim upon which relief can be granted and specifically that the § 548 Claim should be dismissed for lack of standing ("Standing Defense").

On August 28, 2015, the court entered an Order Holding Proceeding in Abeyance, which ordered that this adversary proceeding be suspended until a final resolution by either of the following: (1) litigation between McInnis and Phillips ("State Court Action")[4] that was pending in the New Hanover County Superior Court ("State Court") at the time of Phillips' bankruptcy petition; or (2) a related adversary proceeding initiated by the Chapter 7 Trustee. The State Court Action is more fully described *infra* and included a counterclaim similar to the § 548 Claim but based upon state law.

At a Status Conference conducted on August 15, 2016, the parties advised the court that McInnis dismissed an appeal in the State Court Action, making the matter fully adjudicated; therefore, the court could move forward to resolve McInnis' claims in this adversary proceeding. Phillips contended, and McInnis disagreed, that final resolution of a counterclaim within the State Court Action had a *res judicata* effect upon the § 548 Claim ("*Res Judicata* Defense").

---

[4] On June 5, 2014 and February 20, 2015, the court entered respectively in Phillips' bankruptcy case a Consent Order Modifying/Lifting Automatic Stay and an Amended Consent Order Modifying/Lifting Automatic Stay which modified the automatic stay imposed by 11 U.S.C. § 362 to permit McInnis and Phillips to continue with litigation in the State Court Action.

4

On August 19, 2016, the court entered a Scheduling Order for Submission of Memoranda of Law which directed the parties to file memoranda in support of their respective positions on the *Res Judicata* Defense. After reviewing the memoranda and applicable law, the court determined that it should first assess the previously asserted Standing Defense, because if Phillips prevail on the Standing Defense, then resolution of the *Res Judicata* Defense becomes unnecessary. On March 8, 2017, the court entered an Order Scheduling Hearing on [Phillips'] Motion to Dismiss which scheduled a hearing on the Motion to Dismiss as set forth in the Answer, as well as the newly asserted *Res Judicata* Defense.

## II. RULE 12(b)(6) STANDARD OF CONSIDERATION

Rule 12(b)(6) provides a defense to a claim for a relief for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). A Rule 12(b)(6) request to dismiss "challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true" *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citing *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006); *E. Shores Mkts., Inc. v. J.D. Assocs. Ltd. P'Ship*, 213 F.3d 175, 180 (4th Cir. 2000)). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

When considering a Rule 12(b)(6) motion to dismiss, a court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed.2d 179 (2007). The Federal Rules of Evidence provide that "[t]he court may judicially notice a fact that is not subject to reasonable dispute

because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

### III. FACTUAL BACKGROUND AND ALLEGATIONS

This adversary proceeding culminates a lengthy Hatfield-McCoy type of feud between the parties that has spanned many years and been the subject of numerous court proceedings; however, for purposes of the Motion to Dismiss, the court may only consider the factual allegations contained within the pages of the Complaint, including incorporated documents, and facts derived from the records of Phillips' bankruptcy case and the State Court Action of which the court may take judicial notice.

#### A. Allegations in the Complaint[5]

##### 1. *Phillips' Indebtedness to McInnis*

In 2005, Pages Creek Marine Services, Inc. ("Pages Creek") entered into an agreement to purchase from McInnis and Philip K. McInnis, Jr. ("P. McInnis")[6] all of the stock of Francis-Kilmer Corporation, and Pages Creek executed a promissory note ("Note") in favor of McInnis and P. McInnis in the original principal amount of $337,500.00.  Phillips, who were the principals of Pages Creek, guaranteed payment by Pages Creek under the terms of the Note.  The Note was secured by security interest in the common stock of Francis-Kilmer Corporation, plus all of the business's inventory, furnishings, tools, fixtures, and equipment.

In 2008, Pages Creek entered into a commercial lease agreement ("Lease") with McInnis and P. McInnis, as trustees of the McInnis Family Living Trust, for the lease of real property in

---

[5] This section summarizes specific allegations made by McInnis in the Complaint, as well as information derived from documents attached to the Complaint and incorporated by reference.

[6] The court is informed and believes that P. McInnis is now deceased.

New Hanover County used as Pages Creek's business premises.  Phillips guaranteed Pages Creek's performance under the Lease.

Pages Creek defaulted in its obligations under the Note and the Lease.  On December 15, 2011, the State Court entered an Order ("Judgment") which, *inter alia*, granted judgment against Phillips and Pages Creek and in favor of McInnis and P. McInnis for the sum of (1) $176,129.45 with interest at a rate of 8% from April 1, 2011 for the amount due under the Note, (2) $14,610.00 without accrual of interest for Pages Creek's breach of the Lease, and (3) attorneys' fees and costs.

2. *Initiation of State Court Action*

After entry of the Judgment, the New Hanover County Sheriff's Department ("Sheriff") executed on the Judgment and seized personal property from Pages Creek's business premises and levied business bank accounts.  On October 12, 2012, Phillips, Pages Creek, Norman Phillips, and Bertha Phillips, as joint plaintiffs (collectively "Phillips Family"), initiated the State Court Action by filing a complaint against McInnis, as defendant.  Phillips Family alleged, *inter alia*, that (1) due to excusable neglect, Phillips filed one day late their Notice of Rights to Have Exemptions Designated with respect to the Judgment, (2) Norman Phillips and Bertha Phillips held a lien on the seized property superior to McInnis' interest, (3) the levied bank accounts of Pages Creek contained moneys due and owing to third parties, and (4) McInnis engaged in "self-help" seizures of property.  Based upon these allegations, Phillips Family set forth six claims for relief requesting respectively (1) a declaratory judgment that Norman Phillips and Bertha Phillips held a superior lien on certain property, (2) an injunction against McInnis seizing or selling any property subject to the lien of Norman Phillips and Bertha Phillips, (3) a declaratory judgment that certain funds seized from Pages Creek are in fact the property of third parties, (4) an injunction against McInnis and the Sheriff seizing or disposing of funds in Pages Creek's bank accounts, (5) an injunction

7

against McInnis and the Sheriff seizing and selling property subject to Phillips' Notice of Rights to Have Exemptions Designated, and (6) judgment in favor of Norman Phillips, Bertha Phillips and Pages Creek for damages resulting from abuse of process by McInnis.

### 3. *Phillips' Transfer of Funds*

In or around the time the Sheriff was executing on the Judgment, approximately in October, 2012, Phillips received a $20,000.00 dividend from an association participating in a boat show in North Carolina and transferred ("$20,000 Transfer") these funds to B. Phillips' father to protect them from levy or seizure by the Sheriff.   At some time after Phillips filed their bankruptcy petition, these funds were paid by B. Phillips' father to Phillips' bankruptcy attorney.

### 4. *Phillips' Actions in their Bankruptcy Case*

After Phillips initiated their bankruptcy case, on February 22, 2013, Phillips filed a Second Motion for Turnover, requesting the court to direct the Sheriff to turn over certain property seized during execution of the Judgment.   McInnis and P. McInnis objected and asserted that items requested for turnover belonged to Pages Creek and not Phillips.   Phillips filed an Amended Second Motion for Turnover which proffered that "[a]fter a review of the McInnises' objection to the original Second Motion for Turnover, discussions between [Phillips] and their attorney and a more careful review of Exhibit A of the original Second Motion for Turnover, [Phillips] have removed certain items from Exhibit A of the original Second Motion for Turnover."

On September 11, 2013, McInnis filed an Objection to Confirmation of Chapter 13 Plan in which she contended, *inter alia*, that Phillips failed to disclose certain rental income received through Phillips Properties of Wilmington, L.L.C. ("Phillips Properties").   In a Response filed on October 3, 2013, Phillips "acknowledge that they should have listed these rents in Item 2 of the Statement of Financial affairs as well along with rents received from December 2011 to May 2012

8

and are amending that document to demonstrate all rental income from December 2010 through December 21, 2012."

B. State Court Action Counterclaim

In the State Court Action, McInnis filed a counterclaim against Phillips for violation of the North Carolina Uniform Fraudulent Transfer Act,[7] N.C. Gen. Stat. § 39-23.1 *et seq.* ("UFTA Counterclaim"). On July 13, 2015, the State Court conducted a trial of the State Court Action. At the conclusion of evidence, the State Court directed verdict orally in favor of Phillips on the UFTA Counterclaim. McInnis appealed this ruling to the North Carolina Court of Appeals. On July 29, 2016, McInnis voluntarily dismissed her appeal.

C. Debts in Phillips' Bankruptcy Case

Phillips' bankruptcy petition contained a checked box delineating the nature of their debts as primarily consumer debts, defined as "incurred by an individual primarily for a personal, family, or household purposes." 11 U.S.C. § 101(8). Phillips nevertheless scheduled numerous debts related to their liability associated with Pages Creek and Phillips Properties. Based upon the Phillips' Schedule D – Creditors Holding Secured Claims, Schedule E – Creditors Holding Unsecured Priority Claims (as amended), Schedule F – Creditors Holding Unsecured Nonpriority Claims (as amended), and Schedule H – Codebtors and upon proofs of claims filed in the case, Phillips were liable for the following debts on the date of their petition:[8]

| Creditor | Source | Consumer | Codebtor |
|---|---|---|---|
| BB&T | Claim 1 | $      49.70 | None |
| BB&T | Claim 2 | $  21,822.26 | None |
| BB&T | Claim 3 | $    2,215.39 | None |
| BB&T | Claim 4 | $      404.60 | None |

---

[7] Effective October 15, 2015, North Carolina enacted the Uniform Voidable Transactions Act to replace the Uniform Fraudulent Transfer Act.

[8] If a scheduled creditor filed a proof of claim, then the amount set forth in that proof of claim supersedes the amount scheduled by Phillips.

| BB&T | Claim 5 | $    959.82 | None |
|---|---|---|---|
| BB&T | Claim 6 | $  10,213.45 | None |
| Sherrill McInnis | Claim 7 | $ 248,746.55 | Pages Creek:  Judgment attached to Proof of Claim is against Pages Creek and Phillips |
| JPMorgan Chase Bank | Claim 8 | $  18,020.84 | None |
| IRS | Claim 9 | $  19,524.79 | None |
| BB&T | Claim 10 | $    6,798.08 | Pages Creek:  Note attached to Proof of Claim executed by Pages Creek and guaranteed by Phillips |
| Lynn C. Faulk | Claim 11 | $    6,995.00 | Schedule I designates Pages Creek as a Codebtor |
| SunTrust Bank | Claim 12 | $  10,473.16 | Pages Creek or Phillips Properties:  Schedule F notes debt as possible guaranty of business credit card account and Proof of Claim shows account as a business credit card |
| Comenity Bank | Claim 13 | $    324.04 | None |
| JPMorgan Chase Bank | Claim 14 | $ 153,873.30 | None |
| JPMorgan Chase Bank | Claim 15 | $ 233,259.13 | None |
| YachtWorld | Claim 16 | $    1,321.00 | Pages Creek:  Invoice attached to Proof of Claim designates Pages Creek as customer |
| NC Dept. of Revenue | Claim 17 | $    6,901.00 | Pages Creek or Phillips Properties:  Proof of Claim shows $6,701.00 of claim for sales and use tax |
| BB&T | Claim 18 | $  13,455.25 | Pages Creek:  Account Summary attached to Proof of Claim show Pages Creek as primary borrower |
| BB&T | Claim 19 | $    806.52 | Pages Creek:  Note attached to Proof of Claim shows Phillips Marine, Inc. as primary borrower |

| Sampson County | Schedule E | $ 218.72 | None |
|---|---|---|---|
| CFPU/Penn Credit | Schedule F | $ 216.44 | None |
| George Bender | Schedule F | $ 7,995.00 | Schedule I designates Pages Creek as a Codebtor |
| NC Dept. of Justice | Schedule F | $ 5,000.00 | Schedule I designates Pages Creek and Philips Properties as a Codebtor |
| Wilmington ENT | Schedule F | $ 666.09 | None |
| TOTAL DEBT | | $ 770,260.13 | |

JPMorgan Chase Bank, N.A. ("Chase") filed secured claims for a vehicle loan (Claim 8) and a home mortgage loan (Claim 14) in the respective amounts of $18,020.84 and $153,873.30. Phillips' Chapter 13 Plan provided for the vehicle loan to be treated as a fully secured claim to be paid through the Plan and for Phillips to pay the mortgage loan directly to Chase outside the Plan. After conversion of their case to Chapter 7, on May 23, 2014, Phillips filed a Chapter 7 Individual Debtor's Statement of Intention which indicates an intent to reaffirm the vehicle loan and continue making direct payments on the mortgage loan. As a result, the Chapter 7 Trustee objected to Claim 8 and Claim 14, and on December 5, 2014, the court entered orders allowing these objections. Also on December 5, 2014, the court entered an order allowing the Chapter 7 Trustee's objection to Claim 11 filed by Lynn C. Faulk in the amount of $6,995.00.

Chase also filed an unsecured claim (Claim 15) in the amount of $233,259.13. On September 23, 2013, Phillips filed an Objection to Claim, asserting that this debt due Chase had been fully satisfied from a sale of Phillips' former residence. On October 22, 2013, Chase filed a Response explaining that the claim arose from a home equity loan previously secured by Phillips' former residence, and upon a short sale of the residence, Chase released its lien on the property,

11

but Phillips were still liable for the deficiency balance.  On November 26, 2013, Phillips withdrew

their objection to Chase's claim.

D. <u>Liquidation of Assets in Phillips's Bankruptcy Case</u>

On March 10, 2016, the Chapter 7 Trustee filed a Trustee's Final Report (TFR) ("Final

Report") which reflects that on August 4, 2014, the Chapter 7 Trustee received $20,000.00 from

the trust account of Phillips' counsel.  The Final Report describes the source of this transaction as

"[a]nnual distribution for 2012 from Raleigh Civic Center Boat Show, Inc. received on October 4,

2012."

**IV. DISCUSSION**

A. <u>Jurisdiction</u>

The § 707 Claim, the § 548 Claim, and the § 523 Claim are core proceedings as stated,

respectively, in 28 U.S.C. §§ 157(b)(2)(A), (H), and (I), which the court has the authority to hear

pursuant to 28 U.S.C. § 157(b)(1). *See, e.g.*, *In re Crink*, 402 B.R. 159, 164 (Bankr. M.D.N.C.

2009) (noting that request for dismissal pursuant to § 707 is a core proceeding within the meaning

of 28 U.S.C. § 157(b)(2)(A)); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 36, 109 S. Ct. 2782,

2787, 106 L. Ed.2d 26 (1989) (recognizing that fraudulent conveyance actions are designated as

core proceedings in 28 U.S.C. § 157(b)(2)(H)); *Kelly v. U.S. Dept. of Educ. (In re Kelly)*, 548 B.R.

99, 101 (Bankr. E.D.N.C. 2016) (finding that a dischargeability determination is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(I)).  The court has subject matter jurisdiction pursuant to 28

U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the

United States District Court for the Eastern District of North Carolina.

12

B. § 707 Claim

McInnis requests dismissal of Phillips' Chapter 7 case pursuant to § 707(b) which allows the court to "dismiss a case filed by an individual debtor under this chapter *whose debts are primarily consumer debts* . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1) (emphasis added).  Phillips contend that this claim for relief fails, because Phillips' debts are primarily business in nature.  It is well-settled in this district and beyond that § 707(b) is inapplicable if the debtor's debts are primarily business in nature. *See*, *e.g.*, *In re Cromwell*, 2015 WL 1119711, at *2 (Bankr. E.D.N.C. Mar. 6, 2015); *In re Fish*, 2014 WL 657247, at *2 (Bankr. E.D.N.C. Feb. 20, 2014); *In re Jones*, 2009 WL 102442, at *1 (Bankr. E.D.N.C. Jan. 12, 2009).  The court previously adopted a "totality of the circumstances" approach to determining whether a debtor's debts are *primarily* consumer debts, consistent with the United States Court of Appeals for the Fourth Circuit's precedent for applying a totality test in determining good faith in filing petitions in Chapters 13 and 7. *Jones*, 2009 WL 102442, at *2 (citing *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986); *Green v. Staples (In re Green)*, 934 F.2d 568, 573 (4th Cir. 1991)).

McInnis made no allegation in her Complaint that Phillips' debts are primarily consumer in nature, so she has failed to plea an essential element of § 707(b).  Taking judicial notice of the court's record of claims in Phillips' case, the court can easily conclude that all debts for which Phillips are codebtors with Pages Creek, Phillips Properties, or another business are business debts. The court will assume for purposes of its analysis that all other debts are consumer debts.  The resulting breakdown of consumer versus business debts is as follows:

13

| Creditor | Source | Consumer | Business |
|---|---|---|---|
| BB&T | Claim 1 | $ 49.70 | |
| BB&T | Claim 2 | $ 21,822.26 | |
| BB&T | Claim 3 | $ 2,215.39 | |
| BB&T | Claim 4 | $ 404.60 | |
| BB&T | Claim 5 | $ 959.82 | |
| BB&T | Claim 6 | $ 10,213.45 | |
| Sherrill McInnis | Claim 7 | | $ 248,746.55 |
| JPMorgan Chase Bank | Claim 8 | $ - | |
| IRS | Claim 9 | $ 19,524.79 | |
| BB&T | Claim 10 | | $ 6,798.08 |
| Lynn C. Faulk | Claim 11 | | $ - |
| SunTrust Bank | Claim 12 | | $ 10,473.16 |
| Comenity Bank | Claim 13 | $ 324.04 | |
| JPMorgan Chase Bank | Claim 14 | $ - | |
| JPMorgan Chase Bank | Claim 15 | $ 233,259.13 | |
| YachtWorld | Claim 16 | | $ 1,321.00 |
| NC Dept. of Revenue | Claim 17 | $ 6,901.00 | |
| BB&T | Claim 18 | | $ 13,455.25 |
| BB&T | Claim 19 | | $ 806.52 |
| Sampson County | Schedule E | $ 218.72 | |
| CFPU/Penn Credit | Schedule F | $ 216.44 | |
| George Bender | Schedule F | | $ 7,995.00 |
| NC Dept. of Revenue | Schedule F | | $ 5,000.00 |
| Wilmington ENT | Schedule F | $ 666.09 | |
| SUBTOTALS | | $ 296,775.43 | $ 294,595.56 |
| TOTAL DEBT | | | $ 591,370.99 |

The court did not give value to Claim 8, Claim 11, or Claim 14, as these claims were disallowed in their entirety. Although the claims arising from Phillips' vehicle loan (Claim 8) and mortgage loan (Claim 14) with Chase were disallowed for purposes of distribution in the Chapter 7 case, Phillips' initial desire to pay these debts as fully secured claims in Chapter 13 and subsequent intention in Chapter 7 to reaffirm and continue making payments evidences that Phillips never intended to reorganize or discharge these debts in bankruptcy.

14

Considering only the allowed claims, there are thirteen consumer debts totaling $296,775.43 and eight business debts totaling $294,595.56. The consumer debts slightly exceed the business debts in both quantity and value; however, over seventy-eight percent (78%) of the consumer debt value is from Chase's Claim 15 for the deficiency balance due on a home equity line. "Because of how easily a mortgage can skew the claims in favor of consumer debt, some courts have suggested that debt secured by real property should be excluded from consideration." *Id.* (citing *In re Booth*, 858 F.2d 1051, 1054 (5th Cir. 1998)). Although the real property residence which previously secured this debt was sold pre-petition, the court must consider the originating type of this claim in a totality of the circumstances analysis. If this debt were removed, then the majority value of the remaining debts would be overwhelmingly business in nature.

The court also cannot overlook the fact that execution on McInnis' Judgment, a business debt, appears to be the primary reason for Phillips' bankruptcy filing. Despite the designation in their bankruptcy petition, Phillips' debts are not primarily consumer debts; therefore, relief cannot be granted under § 707(b), and the § 707 Claim should be dismissed pursuant to Rule 12(b)(6).

## C. § 548 Claim

### 1. *McInnis Lacks Standing to Bring the § 548 Claim*

McInnis seeks to avoid the $20,000 Transfer as fraudulent under § 548(a)(1)(A) which provides as follows:

> The *trustee may avoid* any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> > (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . . .

15

11 U.S.C. § 548(a)(1)(A) (emphasis added).  Phillips contend that only a trustee or a Chapter 11 debtor-in-possession[9] may commence an action under this statute; therefore, McInnis lacks standing in the § 548 Claim.

### a. Independent Standing

McInnis argues that although § 548 and similar avoidance statutes[10] contained in Chapter 5 of the Bankruptcy Code allow for avoidance *by the trustee*, they do not expressly prohibit an individual creditor from bringing a cause of action in the place of the trustee.  McInnis reasons that if Congress intended to alter a pre-Bankruptcy Code practice of allowing individuals to pursue and recover similar claims,[11] then it would have specifically abrogated that right.  In support of this theory, McInnis quotes the United States Supreme Court's position that "if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat. Bank v. N.J. Dept. of Envtl. Protection*, 474 U.S. 494, 501, 106 S. Ct. 755, 759, 88 L. Ed.2d 859 (1986).  In this case, the Supreme Court concluded that in codifying the judicially developed rule of abandonment within § 554, "Congress also presumably included the established corollary that a trustee could not exercise his abandonment power in violation of certain state and federal laws." *Id.*

The court fails to see a correlation between *Midatlantic* and Congress's explicit designation of avoidance powers to a trustee.  If Congress wished to expand the power beyond the trustee, then Congress could easily have given it to the trustee *and* "other parties in interest," a phrase used in

---

[9] *See* 11 U.S.C. § 1107(a) (giving a debtor-in-possession all the rights and powers of a Chapter 11 trustee, subject to certain limitations).

[10] *See, e.g.*, 11 U.S.C. §§ 544, 545, 547, 549.

[11] McInnis cited tangentially related cases as evidence of this purported trend. *Louisville, E. & St. L. R. Co. v. Wilson*, 138 U.S. 501, 506, 11 S. Ct. 405, 407, 34 L. Ed. 1023 (1891) (holding that parties in interest may challenge the priority of a claim against property when a state receiver surrenders the property and does not pay the claim); *Rabyor v. Franklin Mortg. Co. (In re Rotary Tire & Rubber Co.)*, 2 F.2d 364 (6th Cir. 1924) (allowing mortgagee-creditor to challenge priority of its claim for insurance premiums against proceeds of property sold in bankruptcy free of liens).

16

numerous other sections of the Bankruptcy Code.  Contrary to McInnis' argument, the court finds that Congress rejected purposefully any previous recognition of standing by a party other than the trustee.  The court also does not find Congress' use of the phrase "the trustee *may* avoid" (emphasis added) within § 548 and other avoidance provisions of the Bankruptcy Code to allow any alternate plaintiffs;[12] rather, this phrase is simply a recognition that the trustee is not required to pursue a potential avoidance if, in the trustee's business judgment, recovery would be challenging or cost-prohibitive.

The court is persuaded by Phillips' analogous reference to the Supreme Court case of *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S. Ct. 1942, 147 L. Ed.2d 1 (2000), which was cited ironically by McInnis in her supporting memorandum.  In *Hartford Underwriters*, an administrative claimant sought recovery under § 506(c), which provides that "[t]he *trustee may recover* from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property . . . ."  11 U.S.C. § 506(c) (emphasis added).  The Supreme Court began by noting that—

> Congress "says in a statute what it means and means what it says there," . . . [and] when "the statute's language is plain, 'the sole function of the courts'"—at least where the disposition required by the text is not absurd—"'is to enforce it according to its terms.'"

*Id.* at 6, 120 S. Ct. at 1947, 147 L. Ed. 2d 1 (quoting *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 254, 112 S. Ct. 1146, 1149, 117 L. Ed.2d 391 (1992); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S. Ct. 1026, 1030, 103 L. Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S. Ct. 192, 194, 61 L. Ed. 442 (1917)).  In concluding that

---

[12] An avoidance action is an adversary proceeding "to recover money or property . . . ." Fed. R. Bankr. P. 7001(1).

the petitioner in *Hartford Underwriters* did not have standing to bring an action under § 506(c),

the Supreme Court stated as follows as follows:

> [T]he statute appears quite plain in specifying who may use § 506(c)—"[t]he
> trustee."  It is true, however, as petitioner notes, that all this actually "says" is that
> the trustee may seek recovery under the section, not that others may not.  The
> question thus becomes whether it is a proper inference that the trustee is the only
> party empowered to invoke the provision. We have little difficulty answering yes.

*Id.*  The court finds this reasoning equally applicable to a trustee's rights under § 548.

Prior to *Hartford Underwriters*, the Fourth Circuit held that a Chapter 7 debtor's insurance

sureties lacked standing to initiate suit in the district court challenging transactions between the

Chapter 7 debtor and a third party under non-bankruptcy law when the causes of action were

similar in nature to the trustee's potential fraudulent conveyance action under § 548. *Nat'l Am. Ins.*

*Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439 (1999).  The Fourth Circuit recognized that if

a cause of action is part of the estate, then the trustee alone has standing to bring that claim. *Id.* at

441 (citing *Steyr-Daimler-Puch of Am. Corp. v. Pappas,* 852 F.2d 132, 136 (4th Cir.1988)).  The

Fourth Circuit rejected the sureties' position that they had standing, because their causes of action

were not property of the estate, and the sureties' claims and the trustee's fraudulent conveyance

claim shared the same underlying focus:

> The Sureties' causes of action are thus so similar in object and purpose to claims
> that the trustee could bring in bankruptcy court that the Sureties lack standing to
> pursue these claims in district court. Until the trustee has abandoned his potential
> fraudulent conveyance action, the Sureties cannot proceed with their claims in
> district court. In fact, this circuit has explicitly held that until there is an
> "abandonment" by the trustee of his claim the individual creditor has no standing
> to pursue it.

*Id.* (citing *Steyr-Daimler-Puch,* 852 F.2d at 136) (other citations omitted).

The United States District Court for the Middle District of North Carolina relied on *Ruppert*

*Landscaping* in holding that creditors lacked standing to continue pursuit of state-law fraudulent

18

transfer claims which were similar to a trustee's fraudulent conveyance claim under § 548, noting that "[g]enerally speaking, after the filing of a bankruptcy petition a creditor lacks standing under section 548 to bring a cause of action for the avoidance of fraudulent transfers." *Ivester v. Miller*, 398 B.R. 408, 430 (M.D.N.C. 2008)[13]. *See also Nangle v. Lauer (In re Lauer)*, 98 F.3d 378, 388 (8th Cir. 1996) (holding that individual creditors of a bankruptcy estate do not have standing to assert claims of voidable transfers); *SunTrust Bank v. Matson (In re CHN Constr., LLC)*, 531 B.R. 126, 131 (Bankr. E.D. Va. 2015) (holding that "only trustees or debtors in possession, and not creditors, can pursue avoidance actions"); *Reed v. Cooper (In re Cooper)*, 405 B.R. 801, 807 (Bankr. N.D. Tex. 2009) (recognizing that "it is rather widely accepted that only the trustee (or debtor in possession in Chapter 11) has independent standing to pursue chapter 5 avoidance actions and other estate causes of actions"). Following, McInnis lacks independent standing to assert the § 548 Claim.

### b. Derivative Standing

McInnis argues that she should have derivative standing to assert the § 548 Claim, alleging that the Chapter 7 trustee lacked the funds or interest to bring the action. McInnis cites *United Jersey Bank v. Morgan Guar. Trust Co. of N.Y. (In re Prime Motor Inns, Inc.)*, 135 B.R. 917 (Bankr. S.D. Fla. 1992), a case which seemingly holds opposite of McInnis' position. In *Prime Motors*, the United States Bankruptcy Court for the Southern District of Florida first noted that individual creditors lack standing to institute avoidance actions, including under § 547 as presented to that case. *Id.* at 919 (citations omitted). The *Prime Motors* court recognized that in *rare* circumstances, an official creditors' committee appointed under § 1102 may bring an action on

---

[13] Strictly following *Ivester*, McInnis should not have been allowed relief from the automatic stay to continue pursuit of the UFTA Counterclaim within the State Court Action; however, stay relief was granted pursuant to a consent order between the parties, and the conflict was not considered by the court. Phillips' *Res Judicata* Defense arises as a result of the UFTA Counterclaim being adjudicated fully in the State Court Action.

behalf of the estate if the trustee or debtor-in-possession abuses its discretion in not doing so but held that "[t]he qualified right of a committee to initiate an avoidance action on behalf of the estate may not, however, be extended to individual creditors or shareholders." *Id.* (citations omitted). McInnis relies on the following footnote:

> It is only under *extreme* circumstances in which courts have permitted an individual creditor to pursue avoidance actions on behalf of an estate. For example, courts have held that when a trustee or debtor-in-possession has *unjustifiably* failed to act and there is no other objective third party, *i.e.,* an official committee, an individual creditor may be given leave to commence such an action.

*Id.* at 920 n. 4 (emphases added) (citations omitted).  A trustee's decision not to pursue an avoidance claim because of cost is certainly justifiable, and it is not an extreme circumstance that would extend standing to a creditor. Rather, it is a sound business decision within the trustee's fiduciary discretion.

While the Fourth Circuit has not ruled specifically on whether a creditor may bring a derivative suit, it noted that—

> [o]ur sister circuits that acknowledge the doctrine [of derivative standing] have allowed a bankruptcy court to grant derivative standing to a creditor or creditors' committee in two limited circumstances. First, several circuits have recognized such standing when the trustee or debtor-in-possession unreasonably refuses to bring suit on its own. Second, two circuits have permitted creditor derivative actions when the trustee or debtor-in-possession grants consent.

*Scott v. Nat'l Century Fin. Enters., Inc. (In re Baltimore Emergency Servs. II, Corp.)*, 432 F.3d 557, 560 (4th Cir. 2005) (citations omitted).  Neither situation applies in the case *sub judice*. McInnis made no allegations in the Complaint that the Chapter 7 Trustee's alleged decision not to pursue the § 548 Claim was unreasonable, or that she initiated the § 548 with the consent of the Chapter 7 Trustee.

Although the Fourth Circuit declined to decide the issue of derivative standing in *Baltimore Emergency*, it opined that—

20

> [e]ven if permitted under the Bankruptcy Code, derivative standing is the exception
> rather than the rule.  If the former were to swallow the latter, creditors could usurp
> the central role that the trustee or debtor-in-possession plays as representative of
> the estate.  The state of affairs would be problematic, because the interests of a
> creditor or creditors' committee may not always align with those of the estate.

*Id.* at 562.  This view indicates that even if the Fourth Circuit allowed derivative standing under

certain circumstances, McInnis' § 548 Claim would not meet the threshold.  The court, therefore,

concludes that McInnis does not have derivative standing to bring the § 548 Claim.

### c. § 1109 Right to be Heard

McInnis alternatively contends that she may proceed on the § 548 Claim under § 1109(b)

which provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee,

an equity security holders' committee, a creditor, and equity security holder, or any indenture

trustee, may raise and may appear and be heard on any issue *in a case under this chapter*." 11

U.S.C. § 1109(b) (emphasis added).  The court dismisses easily this argument.

In the Complaint, McInnis alleges that Phillips' bankruptcy case was commenced under

Chapter 11, and McInnis argues that she still has rights under § 1109, because the § 548 Claim

arose while Phillips' bankruptcy case was one under Chapter 11.  The court does not have to accept

as true McInnis' allegation that the case was in Chapter 11, because the court's record reflects

clearly that Phillips' bankruptcy petition was filed under Chapter 13, and although Phillips at one

time moved to convert to Chapter 11, the case never proceeded under Chapter 11 and was

ultimately converted directly from Chapter 13 to Chapter 7.[14] *See NC & VA Warranty Co. v. The*

*Fidelity Bank (In re NC & VA Warranty Co., Inc.)*, 554 B.R. 110, 120 (Bankr. M.D.N.C. 2016)

(citations omitted) (holding that although a court should accept as true all allegations of material

fact and view them in the light most favorable to the nonmoving party when considering a Rule

---

[14] Interestingly, at the hearing on the Motion to Dismiss, Phillips' arguments on the § 1109(b) issued seemed
to acquiesce that their case had at one time been under Chapter 11.

12(b)(6) motion to dismiss, a court need not accept as true allegations that contradict matters properly subject to judicial notice).

Even if Phillips' case were or had been one under Chapter 11, "the right to appear and be heard is not the same as standing and § 1109(b) does not necessarily mean that every party in interest can seek relief on every issue." *Matter of Rimsat, Ltd.*, 193 B.R. 499, 503 (Bankr. N.D. Ind. 1996) (citing *Still v. Fundsnet, Inc. (In re Southwest Equip. Rental)*, 152 B.R. 207, 209 (Bankr. E.D. Tenn. 1992)). In *Hartford Underwriters*, the Supreme Court opined that "we do not read § 1109(b)'s general provision of a right to be heard as broadly allowing a creditor to pursue substantive remedies that other code provisions make available only to other specific parties." *Hartford Underwriters*, 530 U.S. at 8-9, 120 S. Ct. at 1948, 147 L. Ed.2d 1 (citing Collier on Bankruptcy & ¶ 1109.05 (rev. 15th ed. 1999) ("In general, section 1109 does not bestow any right to usurp the trustee's role as representative of the estate with respect to the initiation of certain types of litigation that belong exclusively to the estate")).

### d. Constitutional Implications

As a final pitch, McInnis references the "case or controversy" clause[15] of the United States Constitution and suggests that she has a constitutionally protected right, as an injured party, to pursue "her" claim under § 548. The court disagrees.

The Supreme Court holds that even when the plaintiff has alleged injury sufficient to meet the "case or controversy" requirement, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*

---

[15] "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." U.S. CONST. art. III, § 2, cl. 1.

*v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205, 45 L. Ed. 343 (1975).  Although an individual creditor may have a legal claim under state fraudulent conveyance laws, such as McInnis' UFTA Claim in the State Court Action, only the bankruptcy trustee has a legal right to relief under § 548 of the Bankruptcy Code.

At the time of the $20,000 Transfer, McInnis was in the process of executing on the Judgment but had not yet obtained any interest in the transferred funds that was superior to any of Phillips' other creditors.  The Bankruptcy Code allows a trustee to avoid fraudulent transfers as a representative of all creditors, and allowing individual creditors to use § 548 to make claims on their own behalf disrupts the Bankruptcy Code's underlying premise of providing for a uniform and orderly distribution of assets to creditors.

## 2. *McInnis has no Right to Recovery from Phillips*

The Complaint prays for "a money judgment against the [Phillips] in the amount of at least twenty thousand dollars ($20,000) on the account of the avoidance[16] of the Transfers pursuant to 11 U.S.C. §§ 547,[17] 548, 550, and 551 . . . with such recovery being for the benefit of the [Phillips'] estate[18] pursuant to 11 U.S.C. §§ 547, 548, 550, and 551."  Section 551 preserves an avoided transfer for the benefit of the estate, and § 550 allows recovery of an avoided transfer from the initial or immediate transferee:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

---

[16] The prayer for relief does not seek specifically avoidance of the $20,000 Transfer.

[17] McInnis' citation of 11 U.S.C. § 547, which allows for a trustee's avoidance of preferential transfers, seems erroneous as the Complaint otherwise contains no allegations or claim for relief supporting relief under this provision, and McInnis did not address this section in any of her memoranda to the court or at the hearing on the Motion to Dismiss.  To the extent that a claim for relief under 11 U.S.C. § 547 is included within the § 548 Claim, dismissal of the claim is incorporated into the court's dismissal of the § 548 Claim.

[18] The prayer for relief indicates that McInnis is seeking judgment not in her individual favor but in favor of Phillips' bankruptcy estate; however, McInnis' arguments throughout this adversary proceeding suggest her intent was otherwise.

> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).  The United States Bankruptcy Court for the Central District of Illinois explained that—

> the Code sections that create the avoiding powers define the elements of those causes of action, but do not identify whom to sue. It is section 550 that identifies the potential defendants. In order to bring an avoidance claim, the trustee must ordinarily name as a defendant at least one of the persons or entities liable for recovery under section 550.

*Cox v. Grube (In re Grube)*, 500 B.R. 764, 772 (Bankr. C.D. Ill. 2013).

Even if McInnis had standing to bring the § 548 Claim, which the court rules she does not, McInnis' cause of action for avoidance and recovery of the $20,000 Transfer lies not against Phillips as the transferors of those funds but against B. Phillips' father as the initial transferee or any subsequent transferee such as Phillips' counsel.  The court *sua sponte* finds that McInnis' failure to name any transferee as a defendant in this adversary proceeding constitutes additional cause for dismissal of the § 548 Claim pursuant to Rule 12(b)(6).

### 3. *The § 548 Claim may be Moot*

McInnis continually argues that she should have standing to bring the § 548 Claim, because the Chapter 7 Trustee allegedly failed to seek avoidance and recovery of the $20,000 Transfer.  To the contrary, the Chapter 7 Trustee's Final Report reflects collection of $20,000.00 from Phillips' counsel.  From the alleged trail of the $20,000 Transfer from Phillips to B. Phillips' father to Phillips' counsel, the court can easily assume that the funds paid to the Chapter 7 Trustee are the same, meaning Phillips' counsel as a subsequent transferee voluntarily surrendered the entire $20,000 Transfer to the Chapter 7 Trustee without the need for an adversary proceeding.  The

result is that any action for avoidance and recovery of the $20,000 Transfer under §§ 548 and 550

is moot, whether brought by the Chapter 7 Trustee or McInnis. The court does not need to make

such assumption, because there are other grounds for dismissal of the § 548 Claim under Rule

12(b)(6).

4. <em>Determination of the Res Judicata Defense is Unnecessary</em>

The court declines to consider the merits of the <em>Res Judicata</em> Defense, because it has

already determined that the § 548 Claim should be dismissed for lack of standing and for failure

to name the proper defendants for this cause of action.

D. <u>§ 523 Claim</u>

Although McInnis did not set forth in the Complaint a specific claim for relief under § 523,

the court will give her the benefit of the doubt as the prayer for relief contained a request under

§§ 523(a)(2)(A) and 523(a)(4).[19]    Section 523(a)(2)(A) excepts from an individual debtor's

discharge a debt—

> for money, property, or services, or an extension, renewal, or refinancing of credit,
> <em>to the extent obtained by</em>—
>
>> (A)    false pretenses, a false representation, or actual fraud, other than a
>> statement respecting the debtor's or an insider's financial condition . . . .

11 U.S.C. § 523(a)(2)(A) (emphasis added). In interpreting § 523(a)(2)(A), the Fourth Circuit

found that—

> [i]t is clear from the structure of the phrase that "to the extent obtained" modifies
> the money, property, services, or credit that constitutes the debt. A plain reading
> of this subsection demonstrates that Congress excepted from discharge not simply

---

[19] The court will not extend this benefit of doubt to any potential claim under § 727, because although the
statute was referenced in the Complaint's introductory paragraph, a claim for relief under § 727 was not properly plead
in accordance with Rule 8 of the Federal Rules of Civil Procedure, incorporated by Rule 7008 of the Federal Rules of
Bankruptcy Procedure. This Rule requires that a pleading that states a claim for relief must, <em>inter alia</em>, contain:
> (2)  a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3)  a demand for the relief sought, which may include relief in the alternative or different types
> of relief.
Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 7008.

any debt incurred as a result of fraud but only debts in which the debtor used fraudulent means to obtain money, property, services or credit.  Structurally, the subsection can have no other meaning.

*Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007).

Section 523(a)(4) excepts from an individual debtor's discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, of larceny." 11 U.S.C. § 523(a)(4). The Fourth Circuit holds that "[t]o prevail under this provision, a creditor must ordinarily make a two-part showing: (1) that the debt in issue arose while the debtor was acting in a fiduciary capacity; and (2) that the debt arose from the debtor's fraud or defalcation." *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 497 (4th Cir. 2008) (citing *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 20 (4th Cir. 1997)).

McInnis did not set out specifically a claim for relief under either § 523(a)(2)(A) or § 523(a)(4) within the Complaint; however, McInnis' arguments at hearing suggested that the basis for the § 523 Claim is Phillips' alleged failure to accurately identify ownership of property in their Second Motion for Turnover and alleged failure to disclose initially rental income in their Statement of Financial Affairs.  These are not allegations that Phillips' debt to McInnis was obtained by false pretenses, a false representation, or actual fraud; that the debt arose while Phillips were acting in a fiduciary capacity; or that the debt arose from fraud or defalcation by Phillips. The Judgment on which this debt is based is attached to the Complaint and reflects that the debt is nothing more than Phillips' liability from a guaranty of obligations of Pages Creek.  Phillips failed to state a claim under § 523 for which relief can be granted, and the § 523 Claim should be dismissed under Rule 12(b)(6).

26

## V. CONCLUSION

McInnis failed to state a claim for which relief can be granted under either the § 707 Claim, the § 548 Claim, or the § 523 Claim, and pursuant to Rule 12(b)(6), the court must dismiss the Complaint in its entirety; now therefore,

IT IS ORDERED, ADJUDGED, AND DECREED as follows:

1.      The Motion to Dismiss be, and hereby is, granted; and

2.      The Complaint be, and hereby is, dismissed.

**END OF DOCUMENT**